### BLUST v. COLLIER et al., Civil Service Com'rs.

(Supreme Court, Appellate Division, Fourth Department. June 4, 1901.)

1. CIVIL SERVICE COMMISSION—DEPUTY SHERIFF—APPOINTMENT—EXAMINATION —EXEMPT CLASS.

    Under Laws 1899, c. 370, § 12, subd. 1, providing that the deputies of principal executive officers, authorized by law to act generally for and in place of their principals, shall be included in the class of appointive officers exempt from examination by the civil service commission, a deputy sheriff is exempt, and may be appointed by the sheriff without having taken such examination, since the sheriff is the principal executive officer of the county.

2. SAME.

    Where a sheriff appointed a deputy "assigned to jail, nominally as engineer to maintain steam in boilers to heat the jail, also to do duty in relieving turnkeys, but generally as deputy sheriff, when so required by the sheriff," and the services required of such appointee included frequent acts as a deputy, the appointment was not a violation of Laws 1899, c. 370, § 13, providing that no person shall be appointed or employed under any title not appropriate to the duties to be performed.

3. MANDAMUS—OPPOSING AFFIDAVITS—DEMURRER.

    Where a petitioner for mandamus goes to argument on the opposing affidavits of the defendants, such proceeding is in the nature of a demur-

rer to the affidavits amounting to an admission that the affidavits are true, and, if there is any serious controversy as to the facts of the case, the writ should be denied.

Appeal from special term, Erie county.

Application of John Blust for mandamus to William Miller Collier and others, constituting the civil service commission of the state of New York, to compel them to certify his salary. From an order directing a peremptory writ, defendants appeal. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Elton D. Warner, Dep. Atty. Gen., for appellants.
Simon Fleischmann, for respondent.

ADAMS, P. J.　This proceeding was instituted by the service upon the defendants on the 21st day of February, 1901, of an order to show cause why a peremptory writ of mandamus should not be granted directing the defendants, who constitute the civil service commission of the state of New York, to certify, or cause to be certified, to the proper authorities of the county of Erie, the pay roll of the sheriff of that county, so far as it embraces the salary of the relator for the month of January, 1901, for services rendered by him in the sheriff's department, amounting to the sum of $75, to the end that the same might be paid by the county. The petition was accompanied by affidavits, and upon the hearing at special term opposing affidavits were read, which it is claimed tended to show that the relator's position in the sheriff's department was a competitive one under the civil service law of the state and the rules and regulations adopted by the civil service commission thereunder, and consequently that such position could only be legally filled by a selection from the eligible list on file in the office of the defendants. There is little, if any, controversy respecting the material facts of the case, which, succinctly stated, are as follows, viz.: Samuel Caldwell was the duly-elected sheriff of the county of Erie, and as such assumed the duties of that office on the 1st day of January, 1901, on which day he appointed his several deputy sheriffs and other subordinates; the total number of such deputy sheriffs for whose compensation the county was responsible being 39, which it is conceded was a less number than the sheriff was entitled to appoint, the population of Erie county being upwards of 400,000. Among the parties thus appointed were the relator, John Blust, and one Adolph Karll, both of whom were certified by the sheriff to the civil service commission as "engineers" at a salary of $900 per annum; and as such they were, by the classification of the commission, properly included in the competitive class. Upon receiving notice of such appointment, the commission called the attention of the sheriff to the fact that the same had been irregularly made, and in violation of the civil service rules. The sheriff was also at the same time notified that there was an eligible list for the position of steam engineers in the county of Erie, and that there were upon that list the names of at least three persons, residents of the county, who had passed the competitive

examination required by law and the rules of the commission. Thereupon, and on the 28th day of January following, the sheriff notified the commission that he had revised his list of appointments, and in such revised list the relator and Karll were designated as "deputy sheriffs, assigned to jail, nominally as engineers to maintain steam in boilers to heat the jail, and who likewise are assigned to do duty in relieving turnkeys, but generally as deputy sheriffs, when so required by the sheriff." In virtue of this revised certificate, it is contended by the relator that his position in the sheriff's department is a confidential one, and therefore exempt from classification in the competitive list; and that, even if it were subject to classification, it had been deliberately placed upon the exempt list by the defendants, acting in their official capacity as civil service commissioners.

By the general rules of the commission it is provided that:

"The exempt class includes the deputies of principal executive officers, authorized by law to act generally for, and in the place of, the principals, and also of officers for positions whose salaries are paid wholly from the emoluments of the head of the office."

And by the rules having special reference to Erie county 32 deputy sheriffs were originally allowed in the exempt class, but subsequently, and upon the application of the present sheriff, that class was so changed as to embrace "thirty-nine deputy sheriffs, seven of whom may be employed in the county jail"; and, as the revised certificate of the sheriff contained the names of but 39 deputy sheriffs, including the relator, it would seem that the latter's contention that his position had been expressly classified as exempt is not entirely without support. But we deem it unnecessary to enter upon a discussion of this feature of the case, inasmuch as we are of the opinion that the order appealed from must be affirmed upon the ground first above stated, viz. that the relator's position is a confidential one, and therefore, from its very nature, one which necessarily exempts him from competitive classification. The general rules of the civil service commission, to which reference has already been made, are founded upon the provisions of the civil service law of this state, which provides that "the deputies of principal executive officers, authorized by law to act generally for, and in place of, their principals," shall be included in the exempt class. Laws 1899, c. 370, § 12, subd. 1. And we think that a deputy sheriff comes within both the letter and the spirit of this provision. The defendants' contention, if we correctly apprehend it, is that the relator is not in fact a deputy sheriff, but that he is simply an engineer, and was designated as a deputy sheriff in order to evade the civil service rules, and in violation of section 13 of the act last cited, which provides, among other things, that "no person shall be appointed or employed under any title not appropriate to the duties to be performed." It is, perhaps, not altogether strange that the sheriff's good faith should be assailed in view of the fact that his first certificate designated the relator as an engineer, but nevertheless the evidence before us establishes conclusively that, although the relator was one of two persons in charge of the steam-heating apparatus at the jail, he was also a deputy sheriff, who had taken upon himself the oath of office,

and as such had executed and given to the sheriff an official bond, and, as a matter of fact, was frequently called upon to "act generally, and in the place of" his principal. It appears that at night the only officers on duty at the jail were a turnkey, a night guard, and one of the engineers; that it often happened that the turnkey, in the performance of his duties, was called to the various parts of the jail to look after prisoners who were creating a disturbance; that, whenever this occurred, he signaled to the engineer on duty, who took the keys of the jail, and performed all the functions of turnkey during the absence of that official. It also appears that United States prisoners were frequently brought to the jail during the nighttime, and upon such occasions it became necessary for the engineer who happened to be on duty to assist in taking proper care of such prisoners. In short, it was made to appear that the engineers were expected to, and did in fact, act as turnkeys or deputy sheriffs whenever called upon so to do, and that the performance of such duties was not exceptional, but of almost nightly occurrence. This being the case, they were, to all intents and purposes, when thus acting, the representatives of the sheriff, and standing in his place. Unquestionably, the office of sheriff is in the highest sense executive in its nature. It is one created by the constitution of the state (article 10, § 1), and its comprehensive character is recognized by the Revised Statutes, which provide that the sheriff shall appoint an under-sheriff, and as many deputies as he may deem proper, not exceeding one for every 3,000 inhabitants of the county. 1 Rev. St. (9th Ed.) p. 643, § 182. Moreover, it is required that the sheriff shall have the custody of the jails in his county, and all persons therein, and that he shall be responsible for the acts of all the jail keepers appointed by him. Id. § 183. Indeed, as has well been said:

"Now, as a thousand years ago, the sheriff is the chief executive functionary of the county, endowed with the same powers and subject to the same liabilities as were his predecessors in the days of King Alfred." Murfree, Sher. p. 2, § 1.

He is not only responsible civiliter for the acts of his deputies and subordinate officers, done under color of office; but he is likewise criminally liable for allowing any prisoner in a civil or criminal action or proceeding to escape, and upon conviction may forfeit his office. Code Civ. Proc. §§ 157–159, 587; Pen. Code, §§ 89, 90, 115, 116. He is also under legal obligation to receive prisoners committed to jail by the United States courts, and is made responsible for their safe-keeping in the courts of the United States according to the laws thereof. Code Civ. Proc. §§ 133, 134. In view of the duties and responsibilities thus imposed upon a sheriff and his subordinates, it is apparent that the positions of the latter are highly confidential in their relation to the chief executive, who, for this reason, if for no other, should be left free to select his own agents. To quote once more from Murfree, Sher. pp. 13, 14, § 17:

"From the character of the relation between the sheriff and his deputies, it is not only reasonable that the principals should be untrammeled in the selection of his agents, but that he should have the power to remove them at pleasure."

And, if this be so, then within the true meaning and intent of the constitution, as well as of the statute, the position of deputy sheriff, jailer, or turnkey should be regarded as confidential, and the person occupying it should consequently be exempt from the operation of the civil service rules, so far, at least, as competitive examinations are concerned; and such, we believe, is now the well-settled rule in this state. People v. Palmer, 152 N. Y. 217, 46 N. E. 328; Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857, 37 L. R. A. 809; People v. Lyman, 157 N. Y. 368, 52 N. E. 132; People v. Gardiner, 157 N. Y. 520, 52 N. E. 564; People v. Dalton, 158 N. Y. 204, 52 N. E. 1119. It is contended, however, that the relator's contention is materially weakened by reason of his proceeding to argument upon the opposing affidavits of the defendants, which, it is asserted, controvert some of the averments of the petition. It is undoubtedly the rule that such a procedure is in the nature of a demurrer, and amounts to an admission that the averments in the opposing affidavits are true. When adopted, therefore, the petitioner's right to the writ must be determined upon such an assumption (People v. New York Cent. & H. R. R. Co., 156 N. Y. 570, 51 N. E. 312); and, if there were any serious controversy as to the facts of this case, the application of this rule would require the reversal of the order appealed from. But, upon a careful examination of the record, we are unable to discover any denial of the material averments of the petitioner, save upon information and belief; and it has been held that such a denial does not present an issue of fact in a proceeding of this nature. People v. Common Council City of Brooklyn, 77 N. Y. 503, 33 Am. Rep. 659; People v. McGuire (City Ct. Brook.) 8 N. Y. Supp. 852; People v. Paton, 20 Abb. N. C. 195. The order appealed from should, consequently, be affirmed.

Order affirmed, with $50 costs and disbursements. All concur.