In the Matter of Joseph A. Fogarty, Individually and as City Manager of the City of Newburgh, Petitioner, against Herbert A. Warden, Individually and as Mayor of the City of Newburgh, et al., Respondents.

Supreme Court, Special Term, Orange County, March 2, 1948.

*Henry Hirschberg* and *Ernest M. Levinson* for petitioner.

*Cribari & Scapolito* for Herbert A. Warden, individually and as Mayor of the City of Newburgh, and others, respondents.

FLANNERY, J. The petitioner, Joseph A. Fogarty, was the City Manager of the City of Newburgh duly appointed to that position on January 2, 1940. The respondents making the cross application are the Mayor and two other Councilmen of the City of Newburgh. On or about January 20, 1948, the respondents Warden, Slack and Hutchins delivered to the petitioner a letter bearing that date, the substance of which was, " We, the undersigned, Mayor and City Councilmen, do hereby request your resignation, to take effect immediately, unless you see fit to exercise your right to have a hearing within the stipulated time of two weeks. Please advise your pleasure."

The petitioner did not resign and asked for grounds or reasons for the requested resignation and demanded a public hearing in accord with the provisions of section 53 of the Newburgh City Charter, and to be furnished with charges a reasonable time prior to the hearing in order to enable him to defend himself and to cross-examine witnesses produced against him and to produce his own witnesses. The respondents making the cross application refused and, thereafter on or about the 26th day of January, 1948, there was served upon him a certified copy of a resolution adopted by the Council January 26, 1948, wherein, after a recital of his refusal to resign, a hearing for the consideration of the subject of his removal was set for 4:00 P.M. at the City Council Chambers on February 10, 1948, and provision was made for the publication of notice of the hearing in the official newspaper of the City of Newburgh once in each week of the two weeks immediately preceding the date of the hearing, namely, the weeks beginning January 27 and February 3, 1948. The petitioner appeared specially at the hearing by counsel and filed a paper in which he objected to the proceedings, objected to his own removal, objected to the authority of the Council and

refused to participate in the proceedings and demanded that no action be taken on his removal as specified in the notice published. His objections were ignored, the public hearing went forward, private citizens in attendance were heard on the proposed action and at the conclusion thereof one of the applicants making the cross application offered a resolution that the office of City Manager was vacant, another councilman offered an amendment to lay the resolution on the table, the amendment was lost, the vote taken and the office of the City Manager was declared vacant.

The petition for review rests upon the provisions of section 16 of the City Charter as amplified by the provisions of section 53 thereof. Before 1941, section 16 provided that the City Manager should be appointed by the Council and hold office " during the pleasure of the council ". Section 53, before 1941, made no specific reference at all to the manager. On May 5, 1941, the Council added to the provision for the removal of the City Manager in section 16 the words " subject to the provisions of section fifty-three hereof " and made other provision about his compensation not important here. At the same time, the Council amended a subdivision of section 53 which bears the number " 1 " by the addition thereto of the following: " except that the city manager shall not be removed from office for any cause without a public hearing having been held thereon, notice of which hearing shall be published in the official newspaper of the city once a week in each of two weeks immediately preceding such hearing."

The petitioner asserts that these additions, made by Local Law No. 1 of the City of Newburgh for the year 1941, mean that he can be removed from the office of City Manager only for cause, upon charges and after a public hearing at which he shall be furnished an opportunity to answer the charges and to produce evidence and witnesses and cross-examine any witnesses produced against him, and that the action of the Council was arbitrary, capricious, illegal, without jurisdiction and in bad faith and had been predetermined upon by the Mayor and two other Councilmen making the cross application and was already prepared in typewritten form before the meeting. The respondents making the cross application interpret the amended sections 16 and 53 differently and say that they mean only that before the City Manager is removed the Newburgh Council must hold a public hearing at which any members of the public may, if they wish, declare their opinions but that after the hearing the Council may still remove the manager at pleasure. The

respondents' supplementary brief assumes the thing to be determined and says that the action to be reviewed is not judicial or quasi-judicial and, therefore, not cognizable by this court under article 78 of the Civil Practice Act.

Both sides have argued ingeniously about the meaning of the amendment and no doubt the determination of this application on the arguments offered and theories advanced would be instructive, if exhausting. Neither questions the operation of Newburgh Local Law No. 1 of 1941 but the court is of the opinion that it is nonoperative. At the time it was enacted by the Council of the City of Newburgh, namely, May 5, 1941, the City Home Rule Law provided in section 15 thereof that a local law subject to mandatory referendum as thereinafter provided should be submitted for the approval of the electorate in one of two manners therein specified. Further in the section it reads thus: "Except as otherwise provided by or under authority of an act of the legislature, a local law shall be subject to mandatory referendum if it: * * * 5. Abolishes, transfers or curtails any power of an elective city officer."

There can be no doubt that the Mayor and Council are elective city officers. There can, also, be no doubt that the amendments sought to curtail their power to remove the City Manager. There is nothing in the "Local Laws of the Cities and Villages in the State of New York Enacted during the year 1941" published in one volume by the Secretary of State pursuant to section 22 of the City Home Rule Law that indicates that the Local Law was passed or approved by any one but the local legislative body of the City of Newburgh in accordance with the provisions of the City Home Rule Law. It was, then, never submitted to the electorate for approval. The court can find no provision anywhere in the Charter, or in any amendment thereto by Local Law submitted to the voters, authorizing the Council, by a majority vote or otherwise, to curtail by local law any power of an elective city officer in a manner to make the curtailment operative without a submission of the enactment to the voters at a special or general election in accord with the provisions of section 15 of the City Home Rule Law.

If the Charter was never amended in some manner permitted by the provisions of the City Home Rule Law to give this great power to the Council, it does not have it, and if it does not have it, the provisions of section 15 of the City Home Rule Law apply. Nor is it any objection that the power is a power of the Council as a body and not of any individual officer. The Mayor

and Councilmen are elective officers, as are the members of the Board of Estimate of the City of New York. That board is composed of elective officers who act as a body, as the Council does. Yet, very early, in *Matter of McCabe* v. *Voorhis* (243 N. Y. 401, 409–410), the court explicitly recognized that under the provisions of section 15 of the City Home Rule Law a local law which curtailed any power of the board of estimate was a nonoperative law until it was approved by an affirmative vote of a majority of the qualified electors of the city, and apparently thought curtailment of the powers of the board a curtailment of the powers of each member thereof. Nor can it be said that the requirement would not apply to a local law by which the Council abdicated some of its own power. But, if this were true, it would be of little comfort to the petitioner, for section 15 of the City Home Rule Law does not require a referendum to revive, restore or increase the Council's power to remove the City Manager and the Council could immediately reamend the Charter to place him in the position in which he was before 1941. He could thereafter be removed at will.

The court may have overlooked some amendment of the Newburgh City Charter made in compliance with City Home Rule Law (§§ 16–21) and granting the Council power to enact this kind of a local law operative without the approval of the electorate. If the court is thus in the dark, it will welcome an immediate application for reconsideration, but until it is established that Local Law No. 1 of the City of Newburgh for the year 1941 became operative without the approval of the electorate, further study of it would be idle.

Petitioner's application must, therefore, be denied, and the cross application granted. Submit orders on notice.