John H. Pennock, J.
These proceedings before the court consist of four different but related matters, and the court for the purpose of clarity in this decision shall refer to the proceedings in numerical order and for the purpose of this decision the court refers to James W. Doherty as the petitioner and John J. Sanvidge, Commissioner of Public Safety, as the respondent, *348 except as to Proceeding No. 3 wherein the parties are reversed. It is also determined that Proceedings Nos. 1 and 2 are based upon the same facts and law and in substance require the same treatment and disposition by the court.
The respondent’s motion to dismiss any of the proceedings on raising an objection in point of law (CPLR 7804, subd. [f]) and that there is another proceeding pending is denied except that as hereinafter determined Proceeding No. 4 is dismissed on the merits.
Proceeding No. 1 was commenced by a show cause order returnable at a regular Special Term of this court for the County of Albany on September 25, 1964. Oral argument was heard, decision reserved, and a stay granted pending the determination. In this proceeding, the petitioner prayed, “ for a stay of all proceedings and for such other and further relief as to this court may seem just and proper ”. The papers were in the form of an affidavit, show cause order, and numerous exhibits. The petitioner failed to set up the proceedings by a verified petition with separately numbered paragraphs. (CPLR 7804, subd. [d].) The affidavit shall be considered the petition, as the court will look to the substance rather than as to form, particularly when the affidavit contained a prayer for relief. (Matter of Fitzgerald v. Conway, 191 Misc. 1048.) The statute implicitly sets forth that it (petition) shall comply with the rules for a complaint in an action. The petitioner’s affidavit fails to meet this test, but this is academic as Proceeding No. 2 was commenced which did contain a verified petition. (CPLR 7804.) The motion of the petitioner to consolidate the Proceedings Nos. 1 and 2 is granted and the latter shall be the primary cause.
Proceeding No. 2 was commenced by a show cause order returnable on October 9,1964, at a regular Special Term for the County of Albany and on the return date thereof, the Honorable Sydney Foster referred the matter to this court.
Proceeding No. 3 was commenced by a show cause order returnable at other than a regular Special Term on October 13, 1964, at Schoharie County. The movant party was John J. Sanvidge, Commissioner of Public Safety and Robert A. Stierer, City Manager of the City of Troy. It prayed for a modification of the stay order permitting supplemental charges and suspension of the Chief. This proceeding was determined by the court on October 27, 1964, after due consideration of the application, answering affidavits and exhibits. This court granted a modification of the stay to permit the filing of supplemental charges, and it was further determined that suspension of the Chief was an executive prerogative. The City Charter places the Chief of *349 Police under the supervision and control of the Commissioner of Public Safety. (City Charter, art. 7, § 7.10.) The Commissioner has the power to suspend, but the power to remove is reserved to the standing committee on public .safety by the charter. (City Charter, art. 7, § 7.10.) Pursuant to the repealed section 7.06 the Commissioner had the right to “ suspend without pay for not to exceed thirty days ”. The court thus concluded the matter in respect to Proceeding No. 3, and an order made. It is to be considered a separate and distinct proceeding.
Proceeding No. 4 was commenced by a show cause order returnable at a regular Special Term of this court on October 27,1964, at Schoharie County. This was an application by John W. Doherty, Chief of Police, directed to Robert A. Stierer the Troy City Manager and John J. Sanvidge the Commissioner of Public Safety and Mayor Lawrence D. Meyer to show cause whether they violated the stays heretofore granted by this court in the primary proceedings. The court entertained oral arguments by counsel and granted the respondents additional time to file an answer and answering affidavits. The court after duly considering the application, the answer, the oral arguments of counsel and the exhibits determines that there is no basis in law or fact to establish any violation of the stay. Therefore, it is determined that Proceeding No. 4 is dismissed on the merits. An order should be submitted in accordance with this determination and is to be considered a separate and distinct proceeding.
Proceedings Nos. 1 and 2 are based upon the same factual situation which basically is as follows: On September 18, 1964, written notice and charges were served upon the petitioner Chief of Police by the respondent Commissioner which stemmed from the arrest of 16 individuals on August 15, 1964 at an athletic club in the City of Troy. The charge alleges that the Chief of Police after effectuating the arrest of these 16 men did not appear in court to sign an information substantiating the charges and also that there were no grounds for the initial arrests. The charges were preferred by John J. Sanvidge, Commissioner of Public Safety of the City of Troy, and provided for a hearing before the said Commissioner on September 30, 1964, on the questions of disciplinary proceedings pursuant to section 75 of the Civil Service Law. The notice further required an answer to the charges be filed not later than September 28, 1964.
These two proceedings stem from the charges and ordinarily the court would not comment or intervene in matters of this type. However, in this instance public policy dictates that this *350 court comment at this point in respect to the facts as well as the law. The record shows at the time of the arrest the Chief of Police was acting under authority of £ ‘ a search warrant ’ ’ issued by the County Judge for the County of Bensselaer on the 13th day of August, 1964. This search warrant in part read: ‘ ‘ commanded at any time of the day or night to make immediate search of the building commonly known as number 3333 Seventh Avenue, Troy, New York, and of the persons found to have gambling paraphernalia in his possession upon the above mentioned premises for the following property; playing cards, dice and craps and any other gambling paraphernalia that might be located in .said premises and, if you find the same or any part thereof, to retain it until further order of this court ”. This search warrant was properly supported by affidavits submitted by the petitioner James W. Doherty and two other members of the Police Department which included the following phrase: “ and placing under arrest any and all persons responsible for the same under the statute in such cases made and provided ”. One affidavit .sets forth the names of 13 individuals some of whom were apparently subjects of arrest in the August 15 raid. A search of the record before the court shows no indication of a warrant of arrest issued by that court. In any event, the Chief of Police and his squad, consisting of other members of the police department, were ‘ ‘ not on a folly of their own ’ ’; the raid resulted from weeks of surveillance of the property and after issue of a .search warrant. To permit charges of this nature to ■stand in abeyance without a full public hearing, would result in a frustration of efforts of police departments to combat crime with the very weapons which have been constitutionally and by statute granted to them as police enforcement agencies of the State. Any guilt in respect to these charges would have to be based upon failure of the Chief to act reasonably under the circumstances. In other words was his discretion imprudent under all the circumstances? However Charge No. 4 in its present posture stemmed from the investigation and alleges violation of a department rule. It differs from Charges Nos. 3 and 4 in that the department rules require mandatory compliance. Nothing herein contained is to be construed as a prohibition of .the Commissioner of Police to file .supplemental charges or amend the present charges so as to comply with the requirements of the City Charter, section 75 of the Civil Service Law, and chapter 834 of the Laws of 1940, which basically cover the procedure for the prosecuting of such charges.
It is also pointed out that section 997 of the Penal Law, which appears to be part of the charges, covers “inform” situations *351 in respect to police officers. The pertinent part reads as follows:
‘ ‘ It is the duty of all sheriffs, constables, and police officers to inform against all persons whom they have reason to believe offenders against the provisions of this article”. (Article 88 covers the commonly referred to gambling penal statute.)
The fact that the Chief of Police placed the 16 individuals under arrest and placed them in custody is prima facie evidence that there was no failure to inform. This case differs from those predicated on criminal charges made against policemen where there is an allegation of conspiracy between a member of the police department and an individual engaged in the crime of book-making or other crimes. There is no evidence in the record before this court to make such finding and if the Commissioner has such evidence neither the administrative hearing nor this court is the proper forum. It would be a criminal procedure and the administrative charges then may run concurrently. (Matter of Cugell v. Monaghan, 201 Misc. 607.)
In Proceeding No. 1, the petitioner Chief of Police prayed that the charges against him be dismissed as insufficient in law and in fact. He alleges that the Commissioner of Public Safety cannot be the accuser and also the trier of the facts. In this he is incorrect. Even if the Commissioner be prejudiced, if the Commissioner has statutory authority then he would be performing an administrative function of the executive branch of government of the City of Troy and such action cannot be restrained by this proceeding. (Matter of Reed v. Richardson, 26 Misc 2d 89.) (Contra in the instant case as the Commissioner lacks statutory authority.) He further claims certain post-requirements as required by statute were not met in the adoption of the local law in that it was not properly numbered and filed, and was thus invalid. This court can find no merit to this argument. (Schacht v. City of New York, 30 Misc 2d 77.) The local law was technically filed on the date it was first delivered to the Secretary of State. The fact that the law had to be renumbered and refiled has no bearing on the issues. This matter is not a criminal proceeding and ex post facto does not apply. (Matter of Evans v. Monaghan, 306 N. Y. 312.) In his prayer for relief the petitioner prays “ and for such other and further relief as to this court may seem just and proper ”. At this juncture the court could grant no specific relief; however this was cured by commencement of Proceeding No. 2.
Proceeding No. 2 is in the nature of a prohibition which prayed that the Commissioner of Public Safety be absolutely restrained from making or entering any order, decision or determination in connection with the charges served upon the petitioner on Sep *352 tember 18, 1964, and staying all proceedings upon said charges and notice of hearing until a hearing and determination. It is this petition which brings into focus the real issue, that is the validity of Local Law No. 2 of 1964. The petitioner claims that Local Law No. 2 of 1964 did by its terms abolish and curtail the powers of the City Council without a referendum. The City Council repealed part of section 7.10 of the City Charter of 1963, by eliminating that part which read as follows: V but may be removed for poor health or on charges preferred by the commissioner and sustained, after a public hearing, by the standing committee on public safety.”
The effect of this amendment by deletion was to transfer the power of the Standing Committee of the Council to the Commissioner of Public Safety. They had the power to hear charges and remove, and the Commissioner under the amendment would have the same power concurrent with statutory authority. (Civil Service Law, § 75; L. 1940,.ch. 834.) This the Council has no power to do. (Matter of Fogarty v. Warden, 191 Misc. 916, affd. 273 App. Div. 910, affd. 297 N. Y. 963.) There can be no doubt the members of the Common Council are elective officers, and there can be no doubt that the amendment of the charter by local law sought to curtail powers reserved to elected officials by the charter. It was conceded by the parties that this local law was never submitted to the electorate for approval and the court can find no provision anywhere in the charter, or in any amendment thereto by local law submitted to the v.oters, authorizing the council by a majority vote or otherwise to curtail any power given to the council by the original charter in respect to the public hearing by the committee. The charter provided that this would be a Standing Committee of the Council. In order to be a member of this committee one must be a member of the Council. Therefore, a member of the Council having to be an elective official, the powers conferred upon him by the charter are powers which cannot be abolished and curtailed without a local law submitted to the voters for referendum, all in accordance with article 3 (§23, subd. 2, par. f) of the Municipal Home Buie Law: “ 2. Except as otherwise provided by or under authority of a state statute, a local law shall be subject to mandatory referendum if it: * * * f. Abolishes, transfers or curtails any power of an elective officer.” This section is similar to its predecessor City Home Buie Law (§ 15, subd. 5), now repealed. In fact it has merely been renumbered.
Apparently the City Council recognized its power under the charter when it gave the City Manager a memorandum which contained the f ollowing directive: “ You will order the Commis *353 sioner of Public Safety to furnish you with a written report of his investigation together with his findings and recommendations to you regarding any possible action under Section 75 of the Civil Service Law. Such recommendations will be approved or disapproved by you, in writing, and all writings, reports, exhibits, including any applications for search warrants, and the ‘ return ’ thereto, will be submitted, no later than 5 P„M. August 28, 1964 to Hon. Louis Bizzo, Chairman of the Standing Committee on Public Safety.”
The respondent urges that members of the Standing Committee are not elected but appointed and although as a member of the committee he does not lose his identity as such and the power he exercises belongs to the committee alone and not to the Council. This is the very reasoning that brings Local Law No. 2 of 1964 under the mandatory referendum provision of the Municipal Home Buie Law. The power does belong to the committee and they serve on the committee by virtue of their being elected officials in the same manner as the Mayor serves under the charter. The appointment to the committee is one step removed from the electorate, nevertheless they serve by appointment as elective officials and when acting on the committee they do so as elective officials. There is a merging of legislative and executive duties under the charter but this is not incompatible with our form of government. The purpose of the charter (Local Laws, 1963, No. 3 of City of Troy) as adopted by a vote of the electorate is plain. So is the Local Law No. 2 of 1964, which amended and repealed it in part. “If an inconsequential.portion may be saved as valid the question remains whether that part may be so separated from the invalid portions as to save it from the condemnation of invalidity. To separate the good from the bad and permit the submission to the voters of a maimed and worthless thing would be folly.” (Matter of McCabe v. Voorhis, 243 N. Y. 401, 416.) In the instant case however, it is apparent that the purpose of Local Law No. 2 of 1964 was to conform the provisions of the charter with other statutes and this is a commendable act on the part of the Council. It is unfortunate that Local Law No. 2 of 1964 in part runs into a prohibition as to abolishing some powers of the Council. Therefore, it would seem unreasonable for this court to undo the efforts of the Council to correct incompatible provisions; therefore the local law is determined as valid except as those portions hereinafter set forth.
It is determined by this court that these portions of Local Law No. 2 of 1964 which abolished or curtailed powers of the elective officers are void.
*354 That part of section 7.10 which deleted the following: “ but may be removed for poor health or on charges preferred by the commissioner and sustained, after a public hearing, by the standing committee on public safety”, is void as a matter of law. The Standing Committee must hear the matter.
The part of sections 7.06 and 7.22, which are repealed in toto, that abolished or curtailed the powers of the Council to hold a public hearing is likewise void as a matter of law.
The amendments to section 7.06 are valid as the reference to section 7.22 is nonessential.
Petitioner in Proceedings Nos. 1 and 2 to submit order in accordance with this decision.
Respondent in Proceeding No. 4 to submit order in accordance with this decision.
Orders in Proceeding No. 3 have been submitted for settlement and an order signed.