In the Matter of LUCILLE BRITT et al., Respondents, v COUNTY OF NIAGARA et al., Appellants.

Fourth Department, June 26, 1981

APPEARANCES OF COUNSEL

*John V. Simon, County Attorney (Walter Moxam* of counsel), for appellants.

*F. Warren Kahn* for respondents.

SCHNEPP, J.

This CPLR article 78 proceeding involves a challenge to the reapportionment of the Niagara County Legislature based on 1980 census data. At issue is whether the Niagara County (County) reapportionment plan, as reflected in proposed Local Law No. 2 of Niagara County (1981) was (1) prepared in violation of the Municipal Home Rule Law (§ 10, subd 1, par [ii], subpar a, cl [13], subcl [c]), which requires utilization of "the latest statistical information obtainable from an official enumeration", (2) planned at closed meetings in violation of the Open Meetings Law (Public Officers Law, art 7), and (3) prepared in violation of due process. Petitioners challenge the procedure used by respondents (the Democratic majority members of the County Legislature, Edward D. Lewis, a Republican legislator who voted with the majority, the County and Assistant County Attorneys, and the clerk of the County Legislature) to develop the reapportionment plan. Petitioners seek a judgment, *inter alia*, declaring that the proposed local law adopted by the County Legislature was adopted in violation of these statutes and restraining respondents from taking further action on the proposed law. Respondents cross-moved for dismissal.

It appears that the preliminary structuring of legislative district lines and the drafting of a reapportionment plan were first undertaken in October, 1980 under the direction of the County Attorney. As official census data for the County was then unavailable, preliminary data were reviewed and, by February, 1981, some district lines were drawn on County maps. Reapportionment had been discussed at meetings of individual Democratic legislators on March 7 and 21, 1981. At the March 7 meeting the Assistant County Attorney, Morton Abramowitz, presented a map which was revised for the March 21 meeting to reflect objections raised by the participants. Further objections were raised and it was understood that further revisions to the plan would be attempted. During this time Abramowitz also met and discussed the reapportionment with a group of Republican legislators. After the receipt

on April 3, 1981 of the final census data, Russell C. Parker, Chairman of the Legislature, on April 7, 1981 appointed an *ad hoc* legislative committee, consisting of four Democrats and three Republicans to bring the reapportionment plan before the Legislature. Parker, a Democrat, also served on the committee. The *ad hoc* committee's first meeting was held on April 15, 1981 at which, in the presence of the press, Abramowitz presented a proposed reapportionment plan. By a party-line vote the committee passed a motion "that the Resolution calling for the Notice of Public Hearing" on the proposed reapportionment plan be placed on the April 21, 1981 County Legislature meeting agenda. On April 20, 1981 a Democratic caucus[1] was held to evaluate the plan at which 14 of the 16 Democratic legislators, including Parker and three other members of the *ad hoc* committee, were in attendance. At this meeting Abramowitz presented a proposed final plan and submitted maps which incorporated modifications made after the April 15 *ad hoc* committee meeting. On April 21, 1981 the *ad hoc* committee again met and the Assistant County Attorney presented the revised maps and plans, which included additional changes made earlier that day and, after discussion, the plan was approved. The resolution of April 15 calling for a public hearing was then amended to reflect the changes in the reapportionment plan. Later that day the County Legislature approved a resolution setting May 5, 1981 as the date for the public hearing on the proposed reapportionment plan. The votes on all resolutions, except for Lewis' vote were along party lines.

Following a hearing in the article 78 proceeding the trial court held that the April 20, 1981 caucus, the *ad hoc* committee meetings, and other meetings of Democratic legislators violated the Open Meetings Law and that the reapportionment plans were developed without due process of law "through proper legislative action". Respondents appeal from the judgment which directed that the County and the County Legislature be named parties respondent, annulled the reapportionment plans, enjoined the County Legislature

---

1. Respondents allege in their answer and return that the April 20, 1981 meeting "was a political caucus only".

from holding the public hearing scheduled for May 5, 1981 on proposed Local Law No. 2 (1981), directed the Legislature to initiate new reapportionment plans with full legislator participation and public input for the County, and ordered that all future reapportionment committee or legislative meetings be open to the public upon proper notice.

Initially we point out that the contention of respondents that the meetings of the Democratic legislators were not subject to the Open Meetings Law because they did not constitute meetings of a "public body for the purpose of conducting public business" is without merit. The statutory directives are clear: "Every meeting of a public body shall be open to the general public" (Public Officers Law, § 98, subd [a]). A public body is defined as "any entity, for which a quorum is required in order to conduct public business and which consists of two or more members, performing a governmental function for the state or for an agency or department thereof, or for a public corporation * * * or committee or subcommittee or other similar body of such public body" (Public Officers Law, § 97, subd 2). Meeting is defined as "the official convening of a public body for the purpose of conducting public business" (Public Officers Law, § 97, subd 1). In interpreting and applying these provisions the courts have construed the Open Meetings Law liberally and have held that gatherings by a public body to discuss public business fall within its provisions *(Matter of Orange County Pub., Div. of Ottaway Newspapers v Council of City of Newburgh,* 45 NY2d 947; see *Matter of Sciolino v Ryan,* 81 AD2d 475; *Matter of Syracuse United Neighbors v City of Syracuse,* 80 AD2d 984). It is of no significance that formal action is not taken or that such gatherings are denominated "work sessions" or "agenda sessions". Moreover, the political caucus exemption (Public Officers Law, § 103, subd 2) has been variously construed and, contrary to respondents' assertion, is inapplicable to closed-session meetings of the majority political party to discuss matters of public business *(Matter of Sciolino v Ryan, supra).*

The determinative issue is whether a quorum was

present at these meetings which allegedly violated the Open Meetings Law. The statutory requirement of a quorum is paramount because the existence of a quorum at an informal conference or agenda session "permits 'the crystalization of secret decisions to a point just short of ceremonial acceptance' (Adkins, Government in the Sunshine, Federal Bar News, vol 22, No. 11, p 317)" *(Matter of Orange County Pub., Div. of Ottaway Newspapers v Council of City of Newburgh,* 60 AD2d 409, 416, affd 45 NY2d 947, *supra).* Since no quorum of the Legislature was present at the caucuses on March 7 and 21, the trial court erred in finding that these meetings violated the Open Meetings Law. Furthermore, a quorum of the County Legislature was not present at the April 20 caucus since a quorum of that body constitutes 16 legislators and only 14 were present. Nor was there a quorum of the *ad hoc* committee at that meeting since a quorum of that committee constitutes five members and only four were present. Although the trial court excluded Parker in its determination as to the number of committee members required to make up a quorum on the ground that he was an ex officio member of the committee and concluded that a quorum constituted four, even under this construction a quorum was not present because Parker was one of the four *ad hoc* members present at the caucus. The court could not exclude Parker to determine the number necessary to constitute a quorum and then include him to conclude that a quorum of the committee was present. Thus, since a quorum was not present at any of these meetings there was no violation of the Open Meetings Law.

 Although a technical violation occurred at the *ad hoc* committee meeting of April 21, 1978 because no public notice was "conspicuously" posted (Public Officers Law, § 99, subd 2), there was no other violation since the press was in fact notified and attended, and the statute does not require notice to the committee members themselves. The Open Meetings Law provides that "the court shall have the power, in its discretion, upon good cause shown, to declare any action or part thereof taken in violation of this article void in whole or in part", and that "[a]n unintentional failure to fully comply with the notice provisions required by this article shall not alone be grounds for in-

validating any action taken at a meeting of a public body" (Public Officers Law, § 102, subd 1). Thus, not every violation of the Open Meetings Law automatically triggers its enforcement sanctions *(Matter of New York Univ. v Whalen*, 46 NY2d 734, 735), and, in the instant case, the technically inadequate notice does not justify the sanctions imposed by the trial court. The Open Meetings Law is designed to foster public awareness, not to assure public participation. Since the resolution merely called for a public hearing, the court acted improvidently by voiding all actions of respondents. At the public hearing the opportunity exists to make public the deliberations of the Democrats in approving the plan, which opportunity, indeed, was present at the *ad hoc* committee meetings attended by the press.

Finally, the claim that the due process rights of petitioners were violated because a reapportionment plan was developed without full public participation is without merit. The Municipal Home Rule Law (§ 10, subd 1, par [ii], cl a, subcl [13]) authorizes a county to reapportion its legislative body through adoption of a local law enacting such a reapportionment plan following a public hearing. Petitioners, citizens and taxpayers, do not claim that the reapportionment plan violates substantive due process (see *McGill v Board of Supervisors of Niagara County*, 28 AD2d 637, app dsmd 19 NY2d 860) and, indeed, no such plan had been enacted when this lawsuit was commenced. Nor do petitioners claim that the required public hearing was not held; in fact, the legislative action which they seek to annul is the resolution calling for a public hearing. A challenge to a reapportionment plan, when and if enacted, on due process grounds would, of course, be proper (see *Franklin v Krause*, 32 NY2d 234, app dsmd 415 US 904; *Iannucci v Board of Supervisors of County of Washington*, 20 NY2d 244).

It is unnecessary to reach other issues raised by the respondents.

Accordingly, the judgment should be reversed, respondents' cross motion granted and the petition dismissed without costs.

HANCOCK, JR., J. (concurring). I concur. I would, however, hold that the party caucuses of the Democratic members of the Legislature on March 7, March 21 and April 20, 1981 were outside the purview of the Open Meetings Law not because there were no quorums of the Legislature present at those meetings but because as partisan political caucuses they were exempt. (Public Officers Law, § 97, subds 1, 2; Public Officers Law, § 103, subd 2).

A meeting of the legislators of one political party to discuss legislation is not a "meeting", i.e., "the official convening of a public body for the purpose of conducting public business." (Public Officers Law, § 97, subd 1.) Nor is a partisan caucus of legislators a "public body", i.e., an "entity, for which a quorum is required in order to conduct public business and which consists of two or more members, performing a governmental function for the state or for an agency or department thereof, or for a public corporation as defined in section sixty-six of the general construction law, or committee or subcommittee or other similar body of such public body." (Public Officers Law, § 97, subd 2.) A party caucus is not a committee or subcommittee or other similar body of the Legislature—the official public body. It is an unofficial meeting of legislators who belong to the same party. No quorum is required and no official business may be conducted.

That the Legislature intended to exclude such a meeting from the Open Meetings Law is demonstrated by the express exemption in subdivision 2 of section 103 of the Public Officers Law and their failure to amend or modify such exemption after the enactment of amendments to section 97 of the Public Officers Law (L 1979, ch 704) following the decision of the Third Department in *Matter of Daily Gazette Co. v North Colonie Bd. of Educ.* (67 AD2d 803).

SIMONS, J. P., CALLAHAN and DENMAN, JJ., concur with SCHNEPP, J.; HANCOCK, JR., J., concurs in a separate opinion.

Judgment reversed on the law, respondents' cross motion granted and petition dismissed without costs.