OPINION OF THE COURT
Charles T. Major, J.
This is a CPLR article 78 proceeding wherein petitioners, Jon F. Brittain et al. (Brittain), seek to annul and set aside the actions of the respondents, the Village of Liverpool (Liverpool), the Board of Trustees of the Village of Liverpool (Board), and the City of Syracuse (Syracuse). It is a case of first impression concerning the rights of the citizens of a community to have input into decisions made by a village board which effectively abolish its own local police force by way of a purported contractual merger of its police "function” with another municipality, i.e., Syracuse. In this regard, petitioners contend that respondents "abolished” the Village of Liverpool Police Department by an act other than local law and failed to provide for a permissive referendum as required by Village Law.
Petitioners also claim that respondents transferred officers of the Village Police Department allowing their rank to be determined in violation of the Civil Service Law. Finally, Brittain further contends that respondents’ actions constitute a violation of Municipal Home Rule Law § 23 by failing and refusing to provide or allow for a mandatory referendum. Petitioners assert that respondents’ actions were arbitrary and capricious, an abuse of discretion and a violation of lawful procedure under CPLR 7803 (3).
Respondents raised objections in point of law by filing a motion to dismiss the petition in lieu of an answer pursuant to CPLR 7804 (f). This court elected to treat the application as one for summary judgment after notification to the parties on February 14, 1997.
*203 Liverpool had maintained its own separate Police Department from the year 1928 until July 1996. For a period of approximately four years, Liverpool considered a variety of approaches to address the escalating costs of providing police services while still maintaining an adequate level of service to the community. On or about July 22, 1996, Liverpool’s legislative body, the Board, approved a motion authorizing the Mayor of Liverpool to enter into a contract with Syracuse to combine the Village police force with the Syracuse City police force.
The contract was executed between Liverpool and Syracuse on July 24, 1996. The contract transfers all equipment and personal property used in the operation of Liverpool’s Police Department to Syracuse. It also transfers all police personnel from Liverpool to the Syracuse Police Department (SPD). The Liverpool Police Benevolent Association, representing the Liverpool police officers, signed an agreement to hold its contract for services in abeyance during the term of the agreement between Liverpool and Syracuse for police services. This agreement stipulates that if Liverpool’s contract with Syracuse for police services is terminated, the Benevolent Association and Liverpool agree to reinstate its original labor contract.
Those officers, formerly employed by Liverpool, are now employees of the SPD. Liverpool has no direct right or authority to select, appoint, train, assign, discipline or otherwise supervise these former employees. However, the agreement allows for Liverpool’s Mayor and a public safety chairperson to sit on a police oversight committee to supervise and monitor the implementation of the agreement. Additionally, the contract provides for unilateral termination by either party after a two-year review of the program. Either Liverpool or Syracuse can, upon written agreement, terminate the contract at any time. If the contract is terminated, all equipment transferred to Syracuse will be returned to Liverpool. In exchange for payment, the SPD now provides Liverpool with police officers, services and equipment pursuant to certain levels or amounts as set forth in the contract. No public referendum was held in Liverpool in relation to this change in the provision of police services to Liverpool or the transfer of the Liverpool police personnel, equipment and property to the SPD.
The petitioners contend that the actions taken by the Board constitute an "abolishment” of the Liverpool Police Department. Village Law § 8-800 provides that a village board of trustees may abolish the police department by local law "subject to permissive referendum.” The petitioners claim that the Board *204 violated Village Law § 8-800 by abolishing the Police Department by other than local law, and by failing to provide for permissive referendum by the residents of Liverpool when it transferred all police officers, employees, equipment and supplies to the SPD.
Additionally, the petitioners claim that the Board’s action violates Civil Service Law §§ 83, 83-a and 83-f. These sections require that in the case of a merger of all or part of existing police agencies within counties, the local legislative body of the new agency, if it be other than a county police agency, "shall notify the state civil service commission who shall create a police advisory board. The purpose of the [advisory] board will be to recommend to the state civil service commission the rank to which present employees would be assigned” (Civil Service Law § 83-a). Petitioners allege that respondents have failed to establish and participate in a Police Advisory Board as required by law. They allege this failure, in itself, would justify annulment of the "merger”.
Lastly, the petitioners assert that the contract between Liverpool and Syracuse for police services is subject to a mandatory referendum because the contract transfers, curtails or abolishes the powers of the Village Mayor and/or the Board to appoint the Chief of Police and other police officers. In this regard, Municipal Home Rule Law § 23 (2) (f) requires that "a local law shall be subject to mandatory referendum if it * * * [a]bolishes, transfers or curtails any power of an elective officer” (emphasis added). Since this power of appointment no longer belongs to the Mayor and/or the Board under the contract with the SPD, the petitioners contend that failing and refusing to provide or allow for a mandatory referendum violates the law and justifies vacatur of the Board’s actions.
Respondents, Village of Liverpool and the Board, contend that the transfer of police function for Liverpool does not establish the "abolition” of the Village Police Department. They cite Matter of Superior Police Officers Benevolent Assn. v Hamill (258 App Div 354) in support of their contention that a voluntary contract for the provision of police services does not abolish or suspend the police function of a subordinate area. Respondents further contend that petitioners’ reasoning would prevent any merger, consolidation or subcontracting of municipal services without first abolishing the department which provides those services. In this regard, respondents enumerate several aspects of the contractual arrangement between Liverpool and Syracuse to support its claim that the Police Depart *205 ment has not been "abolished”, i.e., Liverpool retains a level of control over the police officers, the contract contemplates the return of police function to Liverpool if the contract is terminated, and the Department of Police is still carried as a line item expense in Liverpool’s budget. Moreover, respondents cite General Municipal Law, article 5-G, § 119-n (c), which requires that each participant in a mutual cooperation agreement must have independent authority to perform the function, and section 119-o (1), which authorizes municipal corporations to enter into contracts for the performance among themselves for one or more respective functions, to support their assertion that the contract is a limited and authorized transfer of "function” and not an "abolition” of a department.
Moreover, respondents assert that the express language of Civil Service Law §§ 83, 83-a and 83-f defeats the petitioners’ assertion that the transfer requires the establishment of a Police Advisory Board. Civil Service Law § 83-a requires formation of a Police Advisory Board upon notice to the State Civil Service Commission by "the local legislative body of the new [municipal] agency” but, respondents contend that, since no new agency was formed, section 83-a does not apply. Respondents further contend that voluntary transfers of a police function are governed under article V, title A, § 70 of the Civil Service Law, citing Nickels v New York City Hous. Auth. (208 AD2d 203, affd 85 NY2d 917). However, this section concerns itself with rights of employees in a merged agency.
Finally, respondents allege that Municipal Home Rule Law § 23 does not apply to a limited transfer of function through contract. First, respondents contend that the language "[e]xcept as otherwise provided by or under authority of a state statute,” in section 23 (2) means that article 5-G of the General Municipal Law, which allows for local governments to enter into intermunicipal agreements for providing services, controls in the present case. Respondents further reason that the limited contract does not curtail, transfer or abolish the general appointed power of the Office of the Mayor or the Board, and therefore, section 23 does not apply.
THE LAW
1. Village Law § 8-800
Village Law § 8-800 requires that "[t]he board of trustees may abolish a police department established pursuant to this section by local law, subject to permissive referendum” *206 (emphasis added). The statute requires that in order to abolish a village police department, a village board of trustees may do so only by local law. That law is then subject to permissive referendum. A "permissive referendum”, within the terms of this statute, is a referendum on petition. This would require the Board to abolish the Village Police Department by passage of a local law and, if petitioned by members of the community, allow for a referendum order for the decision to go into effect. The present case turns on the question of what constitutes "abolition” and whether this action can be taken other than by local law.
Respondents rely on Matter of Superior Police Officers Benevolent Assn. v Hamill (258 App Div 354 [3d Dept 1940], supra) to support their contention that the merger of the Liverpool and Syracuse police forces does not "abolish” the Liverpool Police Department, and therefore it does not require a referendum under Village Law § 8-800. In Hamill, the Court held that the merger of the village police force into the county police force did not constitute an abolition of the police department and therefore did not require a referendum under Village Law former § 188-a, from which the current Village Law § 8-800 derives. It found that inasmuch as the County Charter contained provisions which anticipated that village, city or town police departments might be incorporated into the county police, the merger did not "abolish” the village police force, it merely incorporated it into the preexisting county police force.
This court notes that by 1940, Nassau County had adopted its own form of alternative government by Charter (see generally, Historical and Statutory Notes, reprinted in McKinney’s Cons Laws of NY, Book 3A, Alternative County Government Law § 1). In this regard, the New York State Legislature considered "An Act providing an alternative form of government for certain counties and providing for the submission of the same to the electors of any such county” (L 1936, ch 879). This became law on June 5, 1936 (as amended by L 1937, ch 618 [eff May 25, 1937]). Section 2602 of the Laws of 1936 (ch 879) provided that it would not become operative in the county unless the majority of the county voters approved same at a general election. Section 38 of the Laws of 1937 (ch 618 [amdg L 1936, ch 879, § 2605]) provided that when such a law was adopted by a county, any inconsistent laws were deemed non-controlling.
Section 803 of the Laws of 1936 (ch 879), thereafter adopted as part of the Nassau County Charter, was and is entitled: "Entrance into and withdrawal from county police district.” *207 Under this provision any village of the county was authorized by resolution to request that its police district become part of the county police district. Those villages wishing to withdraw from the county police district could do so subject to a permissive referendum requiring a majority of the votes cast.
Thus the Hamill Court was correct in reciting that the police merger therein was not controlled by what is now Village Law § 8-800, but rather by the County Charter which by its nature had been approved by the County electorate. However, in the instant case, Village Law § 8-800 controls.
There is apparently no such provision in the Onondaga County Charter supporting the merger as a reflection of the wishes of the majority of the affected voters. Neither Liverpool nor Syracuse has brought to the court’s attention any legislative action prior to this intermunicipal agreement that would indicate prior contemplation or voter approval of a merger such as this. Accordingly, Hamill (supra) is clearly distinguishable.
Moreover, whereas in the Hamill case (supra) a village police force was merged with a county force (which, in any event, in the absence of a village police force would have had police jurisdiction over the village), here the citizens of the Village of Liverpool have seen their local police force subsumed into the police force of a nearby city. This was done without local voter approval in any way, and but for such contractual "merger”, the City police force would have been without police jurisdiction over the Village.
Respondents also claim that Liverpool has not abandoned its provision of police services, but has merely contracted with Syracuse to provide those services in a more cost effective manner. They assert that since the police still appear as a "department” and a "line” on the Village budget, the Liverpool Police Department has not been "abolished”, and allegedly still exists by way of financial legerdemain. Respondents cite 1975 Opinions of Attorney-General 231 and 34 Opinions of State Comptroller, 1978 (at 95) to support their contention that limited, authorized transfer of a "function” is not abolition of a department. They claim that the contract merely transfers the "functions” of the Police Department to the SPD, but not the Department itself. However, both the Attorney-General’s and the State Comptroller’s opinions relate to situations where only part of a police department’s function was involved. In both of the opinions cited, there remained, in fact, a functioning police department.
*208 In the present case, the entire Liverpool Police Department has been integrated into the SPD. There remains no independent or separately functioning police agency in Liverpool. The presence of an office in Liverpool to facilitate access to police services is clearly not the same as an independent Village police force. Similarly, the fact that the contract has provisions for recision or reestablishment of an independent Liverpool police force does not by itself make it less than a merger of the entity. Finally, the fact that the contract provides for Liverpool to retain some small degree of control over the police operations does not require a conclusion that the Department still exists within the definition of Village Law § 8-800. Furthermore, Attorney-General Opinion No. 87-14 (1987 Atty Gen [Inf Opns] 61) supports an opposite reading of Village Law § 8-800. It states that a village may contract for police services, but it must comply with the referendum requirements to abolish the existing police department. (See also, letter of Attorney-General, Feb. 28, 1996, to Village of Hamburg.)
Respondents’ reliance on General Municipal Law, article 5-G, § 119-o (1), which authorizes municipalities to contract for the performance of certain services to support the formation of the intermunicipal agreement for police services is misplaced. Simply because it is within the power of the two municipalities to contract for a service under section 119-o (1) (which requires that each participant to a contract have the authority independently to perform the service) does not mean that Village Law provisions requiring a referendum in certain circumstances do not apply in the circumstances here present.
Indeed, General Municipal Law § 119-o (1) provides that when a municipality desires to enter into an agreement with another municipality wherein that former municipality’s authority to perform its own services is subject to a referendum pursuant to other law, its rights to participate in such an agreement or contract "shall” be similarly conditioned.
Accordingly, the court finds that the Board acted in derogation of Village Law § 8-800 in de facto abolishing its Police Department without receiving input from the citizens of the community via the permissive referendum which would be required when such a step is properly taken pursuant to local law.
2. Municipal Home Rule Law § 23
Section 23 (2) (f) of the Municipal Home Rule Law requires that a local law shall be subject to mandatory referendum if it *209 abolishes, transfers or curtails any power of an elective officer. Petitioners contend that since the Police Chief and other police officers in Liverpool were appointed by the Mayor and/or the Board prior to the intermunicipal agreement, the loss of those powers of appointment triggers the referendum requirement of section 23. The first question is whether the intermunicipal agreement alters the powers of appointment of elected officials within the meaning of section 23.
The intermunicipal agreement transfers all personnel to the SPD. The agreement also: "recognize[s] the need to continue [to maintain an] identity within their respective jurisdictions. Therefore, each administration will continue to facilitate the maintenance of the present personnel by assignment to their respective jurisdictions. The ten (10) members of the LPD (Liverpool Police Department) and the one (1) member of the LPD to be designated as District Chief, who transfer per this agreement, shall be permanently assigned to the Liverpool District in accordance with the terms of th[e] Agreement. This does not preclude these officers from seeking transfers or promotions within the SPD.” (Intermunicipal agreement 3 [d].)
The agreement fails to specifically address what rights are retained by the Mayor and/or the Board to fill any vacancies in those 11 positions once the agreement is in force. If those positions are to be filled in any manner that curtails, transfers or abolishes some previously held power of the Mayor or the Board to appoint new officers or a new Chief, then section 23 may apply. (See, Matter of Fogarty v Warden, 191 Misc 916 [Sup Ct, Orange County], affd 273 App Div 910 [2d Dept], affd 297 NY 963 [1948]; see also, 1996 Atty Gen [Inf Opns] 1045 [local law which curtails the power of the Mayor is subject to mandatory referendum]; 1988 Atty Gen [Inf Opns] 79 [local law which eliminates Town Board’s authority to dismiss appointed official at will is subject to mandatory referendum].)
Additionally, the intermunicipal agreement provides for the Citizen Review Board, established pursuant to Local Laws, 1993, No. 11 of the City of Syracuse, to have jurisdiction over complaints of police misconduct by any of the officers originally employed by Liverpool. If, prior to the agreement, the Mayor or the Board had jurisdiction over complaints of police misconduct, then this transfer could also be subject to mandatory referendum. (See, Matter of Doherty v Sanvidge, 58 Misc 2d 347 [1964]; see also, 1995 Atty Gen [Inf Opns] 1128 [requiring that local law which transfers authority to discipline police officers from Board of Trustees to Village Manager is subject to mandatory referendum].)
*210 Therefore, it cannot be successfully argued that the inter-municipal agreement does not curtail, transfer or abolish the powers of the Mayor or the Board. However, the second question is whether the intermunicipal agreement meets the requirements set forth by the State Legislature to be a "local law”. Municipal Home Rule Law § 23 requires that the "local law” curtails, transfers or abolishes the power of an elective official in order to mandate a referendum. Municipal Home Rule Law § 2 (9) gives, as the definition of a "local law”, "[a] law * * * adopted pursuant to * * * charter by the legislative body of a local government * * * but shall not mean or include an ordinance, resolution or other similar act of the legislative body” (emphasis added). The only specific action taken by the Village Board in this case was to pass a motion authorizing the Mayor to enter into the contract with Syracuse for police services. The only document which affects the appointive powers of the elective officials in the present case is the intermunicipal agreement. This is not sufficient to overcome the specific definition given by the Legislature of what constitutes "local law”. Accordingly, Municipal Home Rule Law § 23 does not apply to the present case. While strict application of the Municipal Home Rule Law referendum provision was successfully avoided by the Board by this procedural maneuver, it failed to avoid the mandate of Village Law § 8-800. To the extent petitioners seek to annul the decision of the Board on the basis of Municipal Home Rule Law § 23, such application is denied.
3. Civil Service Law §§ 83, 83-a and 83-f
Civil Service Law § 83 states its legislative intent is that "[i]n the event that municipalities propose a merger of all or part of existing police agencies * * * [creating] combinations of municipal police agencies * * * it is necessary to provide a uniform and equitable method for transferring the members of existing police departments into the combined agency structure.” The first question is whether the contract between Liverpool and Syracuse qualifies as a merger of all or part of existing police agencies. Since there is no longer any other police agency in Liverpool other than those police services contractually provided to Liverpool by the SPD, it seems clear to this court that the two police agencies did in fact merge. The statute does not require that the merged agencies form an entirely new police department, nor does the statute offer any exception for those mergers that takes place by means of an inter-municipal agreement. The statute states its intent to insure *211 that such methods are followed to "protect the rights held by present employees in their existing organization.” (Civil Service Law § 83.)
However, the language of section 83-a of the Civil Service Law requires "the local legislative body of the new agency if it be other than a county police agency, [to] notify the state civil service commission who shall create a police advisory board.” The question is whether, as a result of the incorporation of the Liverpool Police Department into the SPD, the SPD is a "new agency” in the meaning of this statute. The Opinion of the State Comptroller (1980 Opns St Comp No. 80-745) supports such a conclusion. It states that "where some or all of the existing police agencies within a county not wholly contained within a city will be consolidated in establishing a * * * joint municipal police agencyl, creation of a police advisory board is] mandatory ” (Emphasis added.) The fact that a joint police agency between Liverpool and Syracuse was created by a contract of possible limited term rather than by some other legislative act does not relieve Liverpool from its obligation to notify the State Civil Service Commission as required by the statute. The possibility that the Legislature wrote this statute with other situations in mind, such as the creation of new, previously unestablished, police agencies, does not negate the other elements of the Legislature’s intent to protect the respective rights of the employees in the new organization. Regardless of whether the intermunicipal agreement constitutes the "abolition” of the Liverpool Police Department, the merger of the two police forces must comply with the applicable law.
The State Comptroller did acknowledge that in the case of a County Charter, which contemplated a contractual relationship between city and village police departments, no merger or combination took place and Civil Service Law § 83 did not apply. In the present case, however, there is no applicable County, City or Village Charter contemplating any sort of contractual relationship, therefore, the opinion in not relevant to this case.
Respondents assert that article V, title A, § 70 of the Civil Service Law governs the transfer of the Liverpool police to the SPD. However, section 70 deals with the respective rights of the employees transferred pursuant to a legitimate merger. Civil Service Law § 83-a specifically recognizes that Civil Service Law § 70 governs transfers of civil servants. Civil Service Law § 83 simply adds the stipulation that under the applicable circumstances, a Police Advisory Board must be formed. Given the court’s findings above that the respondents acted in dero *212 gation of Village Law § 8-800, the court’s finding that the Village need also have complied with Civil Service Law §§83 and 83-a is moot. Should the merger have been found to have been in compliance with Village Law § 8-800, the violation of Civil Service Law § 83 et seq. would have served only to have established a basis to modify the provisions of the merger and to direct the establishment of a Police Advisory Board.
CONCLUSION
It is not for this court to determine the merits of the actions undertaken by the Liverpool Village Board in seeking to redefine the "functions” of its police services. The only questions before the court are whether it can be said that the Board’s actions were rational, and whether or not it acted according to the laws of this State in the manner it went about establishing its purposes. Under CPLR 7803 (3) the Board’s actions were neither capricious nor arbitrary. The law merely requires a determination by this court that the Board’s choices were rational, and did not demonstrate an abuse of discretion. However, while this court now finds that the Board’s actions were clearly rational and therefore neither capricious nor arbitrary nor an abuse of discretion on its part, the court must also determine whether the Board’s actions constitute a violation of lawful procedure or an error of law. (CPLR 7803 [3].)
While respondents contend the Liverpool Police Department was not de jure abolished, a contention bordering on the metaphysical given the facts described, there is no doubt in the opinion of the court that is was intentionally "abolished” de facto in avoidance and abrogation of the statutory authority cited above which allows the local community input by way of referendum under Village Law § 8-800. Respondents’ motion to dismiss is denied and the petition is sustained to the extent indicated above.
The petition is sustained, and this court now annuls and vacates the actions of the respondent Village Board, based on the petitioners’ first cause of action claiming that the Village’s actions resulted in "abolishing” the Liverpool Police Department under Village Law § 8-800 without local law and permissive referendum, and is in error of law and/or was a proceeding in violation of lawful procedure.
The petition is also sustained on the claim that Liverpool was in violation of law in its failure to notify the State Civil Service Commission pursuant to Civil Service Law § 83-a to form a Police Advisory Board. However, that would not in *213 itself be sufficient to annul the Board’s decision, but would have merely served to modify it. The petition is denied on the question of the intermunicipal agreement constituting a violation of the law under Municipal Home Rule Law § 23.
The effect of this court’s judgment for petitioners is stayed for a period of 60 days from entry herein so as to allow necessary enforcement procedural modification and changes to be made in the Village and the City contractual obligations concerning the Liverpool police function, and to allow appeal, if any, of this decision.