*198 OPINION OF THE COURT
Joseph Gerace, J.
This is a proceeding, brought pursuant to article 78 of the CPLR, in which the petitioners seek a judgment enjoining the City of Jamestown from reorganizing its fire department by eliminating, or failing to fill, the position of fire chief. Respondents, the City, the mayor and members of the City Council (who will be referred to collectively as the City), cross-move to dismiss the petition in its entirety.
The City’s fire chief retired in October 2001. The City asserts that it has been unable to find a replacement for him. In response, the mayor developed a plan to create a new position, director of public safety, to oversee both the police and fire departments. Ultimately, this would require the abolition of the fire chief position. The plan provides for an increase in pay to the deputy fire chief, creation of a deputy chief position in the police department, and creation of four additional battalion chief positions in the fire department. A public announcement of the plan was made in May 2002.
Shortly thereafter, the City Council approved a number of resolutions as part of the plan. It did not, however, take any action to abolish the position of fire chief. Nevertheless, petitioners argue that the actions that were taken have, in effect, done just that. They argue that this constitutes a violation of the Jamestown City Charter, in which section C-7 establishes the position of fire chief. The abolition of the position would require the passage of a local law explicitly doing so, rather than a series of resolutions that do so indirectly.
To date, however, the City has not taken any steps that actually eliminate the fire chief position. The court notes that the reorganization plan also calls for the elimination of the police chief position, and that action has certainly not been taken either. The resolutions passed have raised the deputy fire chiefs pay, created an additional deputy chief position in the police department, created additional battalion chiefs in the fire department, and taken money from the fire department budget and transferred it to the public safety administration. In addition, the City Charter was changed to provide a stipend for the director of public safety.
Nothing in the City Charter prohibits any of these actions and they are not, by themselves, incompatible with the hiring of a fire chief. Further, the Charter does not require the City to fill a vacancy in the fire chief position that arises during the course of the position’s four-year term.
*199 The City admits that, at the beginning of the next mayor’s term of office, the Charter will require the mayor to appoint a fire chief. It provides detailed procedures for doing so and empowers the City Council to elect a fire chief in the event that the mayor fails to make the appointment. It does not, however, require that an appointment be made during the term to fill a vacancy. Some charters in New York State contain requirements to fill vacancies during a term. Jamestown’s does not. It would be an inappropriate exercise of judicial power for this court to read into the Charter provisions that the City Council did not see fit to include.
Petitioners point to the case of Matter of Gallagher v Regan (42 NY2d 230 [1977]), in which the Court of Appeals ruled that the Erie County Legislature could not abolish positions required by the County Charter by passing a budget that did not provide funding for the positions’ salaries. The Court held that an office created by charter could not be abolished without an equivalent legislative enactment.
Here, the City has not eliminated the funding for the fire chiefs salary. It has been reduced, but the reduction is not unreasonable given the fact that the position has been unfilled for most of the year. If a fire chief were hired before the end of this year, the funding in place would provide an adequate salary for the remainder of the year.
The mayor acknowledges that full implementation of the reorganization plan, if undertaken, would require the passage of a local law. Nothing has been done to this point, however, that is in contradiction to the requirements of the City Charter.
Petitioners also argue that the City has violated New York State’s Open Meetings Law, contained in article 7 of the Public Officers Law. Section 103 (a) requires that: “Every meeting of a public body shall be open to the general public, except that an executive session of such body may be called and business transacted thereat in accordance with [section 105] of this Article.”
It is important to separate the requirements of the Open Meetings Law, which simply requires that meetings be open to the public, from the idea that there should be a public debate about the City’s reorganization plan. The petition asserts that “[t]he public was denied an opportunity to engage in any nature of debate.” The Open Meetings Law does not require that the public be given such an opportunity. It only requires that the proceedings of public bodies, like the City Council, be open to observation by the public.
*200 It is undisputed that resolutions and local laws passed so far in furtherance of the reorganization plan were done in sessions open to the public. The petition is filled with allegations of shady dealings and back-door arrangements, but no proof is submitted to substantiate the accusations. Rather, they are supported only by speculation and surmise. Discussions or meetings at which there was not a quorum of the Council present do not constitute a violation of the Open Meetings Law, even if they did take place. (Matter of Britt v County of Niagara, 82 AD2d 65 [4th Dept 1981]; Matter of Tri-Village Publs, v St. Johnsville Bd. of Educ., 110 AD2d 932 [3d Dept 1985].)
The only closed meeting that is shown to have taken place, by admission of the City, not proof submitted by petitioners, is an executive session in May 2002, to address confidential personnel issues involved in the mayor’s proposal. The record is not sufficient to determine whether or not that executive session was properly called. However, even if it was not, not every violation of the Open Meetings Law calls for a sanction. The burden is upon petitioners to establish good cause why this court should exercise its discretion to impose a sanction upon the City. (Matter of New York Univ. v Whalen, 46 NY2d 734 [1978]; Matter of Griswald v Village of Penn Yan, 244 AD2d 950 [4th Dept 1997].) Here, there has been no such showing. All of the legislative actions taken to date have been conducted in open session. The primary action complained of by the petitioners, the abolition of the fire chief position, has not occurred at all. Therefore, there is no reason to impose any sanction.
The court certainly agrees with the petitioners that robust public debate is essential to our system of government. The court, however, can be concerned only with violations of the law. There has been none here. Whether or not the City’s reorganization plan is a good one is a decision to be made in the Council chamber, not the courtroom.
It is, therefore, ordered that the petition is denied, in its entirety; and it is further ordered that the cross motion to dismiss is granted.