Gregory J. Poland, Esq. Informal Opinion Corporation Counsel No. 2004-9 City of Binghamton City Hall Government Plaza Binghamton, New York 13901
Dear Mr. Poland:
You have asked whether a proposed amendment to the City Charter of the City of Binghamton relating to public comment at City Council meetings is subject to the referendum requirement of section 23 of the Municipal Home Rule Law. The proposed charter amendment would require the City Council to grant every individual who wished to speak at one of its meetings at least five minutes to do so prior to the City Council's consideration of its legislative agenda.
You have informed us that the City of Binghamton is a city organized under the Second Class Cities Law[1] and remains governed by section 34 of the same, which provides that "[t]he common council shall determine the rules of its own proceedings." According to the Rules and Procedures of the Binghamton City Council, a simple majority of the City Council has the power to alter, suspend or rescind a rule of procedure, so long as notice of the motion to do so was given at the previous meeting or consideration of the motion receives unanimous consent of those present. Binghamton City Council Rules and Procedures § 2-39(13) (2004).
At issue here is whether the proposed amendment to the City Charter would curtail the powers of the City Council, thereby triggering the requirement for a mandatory referendum pursuant to section 23(2)(f) of the Municipal Home Rule Law. This provision stipulates that, except as otherwise provided, "a local law shall be subject to mandatory referendum if it . . . [a]bolishes, transfers or curtails any power of an elective officer." It is well-accepted that this provision applies to local laws that curtail the powers of an elective body, such as the City's Common Council[2]. See, e.g., Morin v. Foster, 45 N.Y.2d 287 (1978) (county legislature); Doherty v. Sanvidge, 58 Misc.2d 347, 352
(Sup.Ct. 1964) (city council); Op. Att'y Gen. (Inf.) No. 85-41 (stating principle).
While section 23(2)(f) "has been strictly construed by the courts," Op. Att'y Gen. (Inf.) No. 95-8, and the prior opinions of this office, see, e.g., Op. Att'y Gen. (Inf.) No. 90-47 ; 1976 Op. Att'y Gen. (Inf.) 114, prior opinions of both this office and the Office of the State Comptroller have concluded that a local law, while affecting an elected official's powers, may not have an impact that is substantial enough to bring it within the meaning and purpose of section 23(2)(f). See Op. Att'y Gen. (Inf.) No. 85-73 (concluding that referendum requirement for local laws that "transfer any power" of elected officials was not intended to include all delegations of administrative and ministerial tasks); Op. State Compt. No. 91-43 (distinguishing for purposes of local law referendum requirement transfer of town clerk's statutory duties over auditing of town claims from delegation of certain ministerial pre-audit steps). In particular, we have recognized the concern that subjecting "any transfer of administrative powers, no matter how menial" to the referendum requirement "could result in the paralysis of government and would not serve the public interest." Op. Att'y Gen. (Inf.) No. 85-73.
For the reasons explained below, we believe that the proposed amendment to the City Charter would affect the City Council's powers in a manner which requires a mandatory referendum for its enactment. New York adheres to the doctrine of legislative equivalency, under which the "repeal or modif[ication of] a statute requires a legislative act of equal dignity and import."Gallagher v. Regan, 42 N.Y.2d 230, 234 (1977); see also New YorkPub. Interest Research Group v. Dinkins, 83 N.Y.2d 377, 385 (1994) (local law amending the city charter cannot be amended by resolution). Under this legal principle, were the proposed amendment to the Binghamton City Charter enacted, the City Council would be powerless to modify it except by further amendment to the City Charter.
Significantly, such further amendment would be subject to numerous additional procedural hurdles beyond those applicable to the City Council's Rules and Procedures. While the City Council could alter its own procedural rules on a simple majority vote, upon either notice or unanimous consent of those present, amendment of a local law or charter provision generally requires prior notice to the local legislators, a public hearing, approval by the local chief executive officer, filing and publication of the amendment See
Municipal Home Rule Law § 20(1),(4),(5); id. § 27[3]. It is thus apparent that the City Council would face a greater burden in modifying or repealing the proposed amendment than it would if the comment rule were instead adopted as part of the Council's own Rules and Procedures.
What is less clear is whether the proposed rule providing for public comment would itself curtail the City Council's powers in a meaningful way. On the one hand, permitting preliminary public comment at Council Meetings fosters responsible governance because it allows the council members to hear the views of their constituents before taking legislative action. Under ordinary circumstances, we presume that there would be little need for the council members to limit public comment, and thus adoption of the proposed rule as a local law would have no practical effect on the City Council's ability to consider legislation or otherwise proceed with its meetings in an orderly manner. But to the extent the proposed amendment permits an unbounded preliminary public comment period at City Council meetings, it has the potential of allowing a relatively small group of citizens to delay significantly the Council's consideration of its legislative agenda. Adopting such a rule as a local law would, under those circumstances, substantially diminish the City Council's present flexibility to control the conduct of its meetings so as to allow for legislative action. For this reason, coupled with the additional procedural steps involved in modifying or repealing the proposed amendment, we conclude that the proposed amendment would curtail the City Council's powers within the meaning of section 23(2)(f) and would therefore be subject to the mandatory referendum requirement of that provision.
You have also asked whether the proposed charter amendment violates any provisions of State law. We believe the subject matter of the proposed amendment falls within the City's home rule powers, since it relates to the City's "property, affairs or government." See Municipal Home Rule Law § 10(1)(i). Nor would the provision conflict with the Open Meetings Law, though it would go beyond what that law requires. See Public Officers Law § 103(a) (mandating that meetings of public bodies be open to the public, without requiring public participation); id. § 110(2) (permitting local laws or charters to provide for greater public access than that required by the Open Meetings Law); DeSantis v. City ofJamestown, 193 Misc.2d 197, 199 (Sup.Ct. 2002) (Open Meetings Law does not require that public be given opportunity for public debate, but only that proceedings be open to observation by the public).
The Attorney General issues formal opinions only to officers and departments of State government. Thus, this is an informal opinion rendered to assist you in advising the municipality you represent.
Very truly yours,
LAURA ETLINGER, Assistant Solicitor General In Charge of Opinions
By: _____________________________ Gregory Klass Assistant Solicitor General
[1] A "second class city" is a city that on December 31, 1923, had a population according to the 1920 Federal Census of at least 50,000 but less than 175,000. See Second Class Cities Law § 4; Op. Att'y Gen. (Inf.) No. 81-63. Second class cities are permitted to supersede any provision of the Second Class Cities Law within their home rule powers, except where specifically restricted by the Legislature. See Second Class Cities Law § 4; Op. Att'y Gen. (Inf.) No. 83-11.
[2] Municipal Home Rule Law § 23 applies only to the enactment of alocal law, which is specifically defined for purposes of the Municipal Home Rule Law as not including "an ordinance, resolution or other similar act." Municipal Home Rule Law § 2(9). Thus, where a legislative body takes appropriate action by a less formal means, such as by resolution, this referendum requirement is not invoked. See Biffer v. City of Saratoga Springs, 279 A.D.2d 749
(3d Dep't 2001) (budget resolution); Brittain v. Village ofLiverpool, 172 Misc.2d 201, 209-10 (Sup.Ct. 1997) (motion authorizing intermunicipal agreement); Op. Att'y Gen. (Inf.) No. 82-71 (reduction in salary adopted by resolution).
[3] Alternatively, amendment of a city charter may be initiated by petition. See Municipal Home Rule Law § 37.